UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Milan Allen,

    Plaintiff,

v.

Carlos M. Gutierrez,[1] Secretary,
United States Department of Commerce,

    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-4387 ADM/JSM

_____

Stephen M . Thompson, Esq., Friederichs & Thompson, P.A., Minneapolis, MN, argued for and on behalf of Plaintiff.

Mary Jo Madigan, Esq., Assistant United States Attorney, Minneapolis, MN, argued for and on behalf of Defendant.

_____

## I. INTRODUCTION

On March 15, 2006, oral argument before the undersigned United States District Judge was heard on Defendant Carlos M. Gutierrez, Secretary, United States Department of Commerce's ("Defendant") Motion to Dismiss, or in the Alternative, for Summary Judgment [Docket No. 12]. In his Complaint ("Complaint") [Docket No. 1], Plaintiff Milan Allen ("Plaintiff") alleges violations of Title VII premised upon retaliation discrimination, race discrimination, and hostile work environment. For the reasons set forth herein, Defendant's Motion is granted.

## II. BACKGROUND

Plaintiff Milan Allen, an African American, has served as a hydrologist for the National

---

[1] The docket reflects Donald L. Evans as the Secretary of Commerce. Since the filing of this suit, Carlos M. Gutierrez has replaced Evans as Secretary of Commerce. The docket will be changed to reflect this.

Weather Service ("NWS") since 1978. Allen Dep. (Def.'s Ex. [Docket No. 14][2] 1) at 7. Plaintiff is supervised by Dr. Thomas Carroll ("Carroll"). Carroll Dep. (Def.'s Ex. 2) at 28. The Acting Chief of the Hydrological Services Division, Dr. Thomas Graziano ("Graziano"), serves as Carroll's supervisor. Graziano Dep. [Docket No. 15] at 12-13.

On November 26, 2002, Plaintiff came to work early, but sent an email stating that he would be leaving early to conduct personal business. Def.'s Ex. 5. That same day, Plaintiff missed the daily 10:00 morning briefing conducted by Carroll. Allen Dep. at 16-17. The following day, November 27, 2002, Carroll questioned Plaintiff about missing the morning briefing and his early departure on the previous day. Def.'s Ex. 6. Additionally, at the same meeting, Carroll denied Plaintiff's request to switch to a work shift beginning at 6:30 a.m. and concluding at 3:00 p.m. Id. Previously, Plaintiff had worked this schedule, but recently had been moved to the 8:00 a.m. to 4:30 p.m. shift. On December 13, 2002, Carroll discussed these scheduling issues again with Plaintiff. Id. Carroll informed Plaintiff that he must attend scheduled office meetings, continue to work the 8:00 a.m. to 4:30 p.m. shift, and submit a sick leave slip for the briefing he missed. Id. A written memorandum from Carroll to Plaintiff summarized this conversation. Id.

In the spring of 2003, Carroll proposed to Graziano suspending Plaintiff for three days for failing to follow standard leave procedures and for being absent without leave in relation to the events of November, 2002, as well as other alleged incidents of leave procedure violations.

---

[2] Rather than filing a supporting affidavit attesting to the accuracy of the exhibits, both parties have simply attached exhibits to their motions. Counsel for both parties are reminded that Local Rule 7.1(b) requires the filing of an affidavit with all dispositive motions, and are instructed to adhere to that rule in the future.

Def.'s Ex. 7.  Graziano instead chose the sanction of an official reprimand by a memorandum addressed to Plaintiff on July 22, 2003.  Def.'s Ex. 8.  Graziano found that sufficient evidence existed for a suspension, but nonetheless chose to mitigate the suspension, noting that he expected that in the future Plaintiff would follow sick and annual leave procedures.  Id.  Carroll also issued a memorandum to Plaintiff on that same day, setting forth specific instructions for Plaintiff to follow for use of his sick and annual leave.  Def.'s Ex. 9.  These procedures were drafted specifically for Plaintiff.  Carroll Dep. at 120.  Furthermore, Carroll sent a separate memorandum to Plaintiff on July 22, 2003, instructing Plaintiff to follow the chain of command and to address workplace issues with him before contacting other supervisors.  Def.'s Ex. 10.  This directive was born out of emails sent by Plaintiff to Carroll's superiors discussing his allegations of discrimination and retaliation.  Id.; Carroll Dep. at 122-24.

In response to these two directives from Carroll, Plaintiff enlisted the help of his union.  He filed an official grievance regarding the leave directive.  Def.'s Ex. 11.  Following the grievance, Carroll withdrew the leave directive on August 25, 2003.  Carroll Dep. at 132-33; Def.'s Ex. 13.  A union representative also sent Carroll a letter regarding Carroll's chain of command directive.  Def.'s Ex. 12.  Ultimately, Carroll eased the directive to Plaintiff.  Def.'s Ex. 15.

Also in the spring of 2003, Plaintiff applied to attend a ten month Department of Commerce training program ("COMSCI").  Plaintiff's application was denied by Carroll as the cost was prohibitive.  Allen Dep. at 55-56.  In 2004, however, Plaintiff received approval to attend the training, and did so in Washington, D.C.  Id. at 56-62; Def.'s Ex. 16.  After returning from this training, Plaintiff asked for and received permission to volunteer for FEMA following

Hurricane Katrina in September, 2005. Allen Dep. at 63-64.

On August 28, 2003, Plaintiff sought Equal Employment Opportunity ("EEO") counseling, claiming racial discrimination. Def.'s Ex. 17. He filed a formal Amended EEO Complaint on March 25, 2004, alleging discrimination on the basis of race, harassment, and retaliation. Def.'s Ex. 18. The EEO Complaint listed a number of incidents, including the events described above that occurred on November 27, 2002, December 13, 2002, July 22, 2003, and August 25, 2003. Id. Plaintiff's EEO Complaint was dismissed on July 12, 2004. Def.'s Ex. 19. The final agency decision determined that some of Plaintiff's claims were untimely, others had been resolved through the grievance process, and others were either found to be moot or were not considered to be adverse employment actions. Id.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

**B.     Procedural Bars to Recovery**

Before the substance of Plaintiff's claims is analyzed, Defendant has raised potential procedural bars to Plaintiff's claims, including untimeliness and failure to exhaust administrative remedies. It is well established that federal employees asserting Title VII claims must first exhaust administrative remedies before filing suit in federal court. Brown v. General Servs. Admin., 425 U.S. 820, 832 (1976). Under 29 C.F.R. § 1614.105(a)(1), allegations must be raised with an EEO counselor within 45 days of the alleged occurrence. Although not a jurisdictional bar, the 45 day time limit acts as a statute of limitations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Here, Plaintiff spoke with an EEO counselor on August 28, 2003. Thus, behavior stemming from incidents preceding the 45 day window ending on that date can not be considered. Therefore, Plaintiff's allegations occurring in 2002 can not form the basis for the available Title VII claim here.[3]

Plaintiff argues that his 2002 allegations should be considered under the continuing violations doctrine. However, courts have only applied the continuing violations doctrine to hostile work environment claims. Wilson v. Brinker Int'l, Inc., 382 F.3d 765, 771 (8th Cir. 2004). Furthermore, even if the 2002 allegations are added to Plaintiff's hostile work environment claim, it still fails, as will be discussed hereafter.

---

[3] Defendant also claims that the allegations contained in ¶¶ 26-30 of the Complaint can not be considered, because it is alleged that they occurred in 2004, and Plaintiff made no attempt to exhaust his administrative remedies on those claims. However, the exhibits filed by Defendant make clear that the incidents referred to in those paragraphs of the Complaint actually occurred in 2003 within the relevant 45 day window, and are simply misdated in the Complaint. As a result, they will be considered.

**C.     Title VII Claims**

Even if all of Plaintiff's allegations survive the procedural bars, Plaintiff's claims fail on substantive grounds. The burden shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), applies to Plaintiff's Title VII claims. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-36 (8th Cir. 1999) (applying framework to Title VII claim). Under this framework, the plaintiff employee must initially establish a prima facie case of discrimination. This showing creates a presumption that the employer acted unlawfully. Id. at 1134-35. The burden of production then shifts to the employer who must provide legitimate, non-discriminatory reasons for the adverse employment action. Id. If the defendant meets this requirement, the burden returns to the plaintiff to show that the employer's explanation is pretextual. Id.

To demonstrate a prima facie race discrimination claim, a plaintiff must prove the following elements: (1) he belonged to a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; and (4) non-members of his class were treated differently. Bredding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999). Retaliation claims require a showing by a plaintiff that: "(1) []he engaged in statutorily protected activity; (2) an adverse employment action was taken against [him]; and (3) a causal connection between the two events." LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir. 2001). Finally, the prima facie elements of a hostile work environment require a plaintiff to demonstrate: "(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or

should have known of the harassment and failed to take proper action." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005).

Here, Plaintiff's prima facie case for each claim fails because he can not establish the essential element of suffering an adverse employment action or that a term, condition, or privilege of employment was affected. Recently, the Eighth Circuit discussed adverse employment actions in Box v. Principi, 442 F.3d 692 (8th Cir. 2006). In Box, the plaintiff, a contract specialist for the Department of Veteran Affairs, claimed she was discriminated against by not receiving training on or being assigned to more complex contracts, which would allow her to advance her career. Id. at 694-95. The plaintiff also alleged she was denied a leave request in retaliation for EEOC activity. Id. The Eighth Circuit upheld the district court's grant of summary judgment to the defendant, finding that the plaintiff had failed to demonstrate that she had suffered an adverse employment action.

The Eighth Circuit explained that "A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' There must be a material change in employment status–a reduction in title, salary, or benefits." Id. at 696, quoting Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1042 (8th Cir. 2005). It also stated that "[a]n employer's denial of an employee's request for training is not, without more, an adverse employment action. Nor does the record permit an inference that [the appellant's] race was a factor in this training dispute." Id. at 697, quoting Griffith v. City of Des Moines, 387 F.3d 733, 737 (8th Cir. 2004). Based on these statements of the law, the Eighth Circuit found that the plaintiff's proffered adverse actions of a job title change, alleged lack of training, and denial of leave did not constitute a material change in employment status. Id.

In the instant case, Plaintiff's claims of adverse actions against him do not rise to the actionable level. Plaintiff has alleged that adverse actions taken against him include a failure to allow Plaintiff to work a requested shift, failure to approve leave, an attempt to suspend Plaintiff, denial of training, and losing the responsibility of snow mapping. No authority has been presented to demonstrate that any of these actions constitute an adverse employment action. Furthermore, many of these situations were remedied before this litigation was commenced. For example, after filing a grievance regarding the leave directive Carroll applied to Plaintiff, the leave directive was withdrawn. Additionally, the proposed suspension of Plaintiff was mitigated by Graziano to a reprimand. Finally, although Plaintiff was denied the opportunity to attend COMSCI training in 2003, he was approved for and attended the ten month program in 2004. Because none of the incidents rise to the level of adverse employment actions, Plaintiff's race discrimination and retaliation claims fail.

Similarly, Plaintiff's hostile work environment fails because the complained of behavior did not affect a term, condition, or privilege of employment. "Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 845 (8th Cir. 2005) (citation omitted). Furthermore, "'complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language . . . jokes, and occasional teasing' obtain no remedy. . . .To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." Id. at 845-46 (citations omitted). Finally, "In determining whether a work environment was sufficiently hostile or abusive, we examine the totality of the circumstances,

8

including whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance." Id. at 846 (citation omitted).

Here, the behavior cited by Plaintiff does not rise to the level of a hostile work environment. Even assuming that Plaintiff was targeted because of his race, the actions taken by Carroll do not rise to the high level required to demonstrate a hostile work environment. There is no evidence presented to suggest that Carroll's behavior unreasonably interfered with Plaintiff's work performance, nor is there an allegation that the behavior was physically dangerous or threatening. Because the incidents cited by Plaintiff did not affect a term or condition of his employment, his hostile work environment claim fails.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Carlos M. Gutierrez, Secretary, United States Department of Commerce's Motion to Dismiss, or in the Alternative, for Summary Judgment [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 12, 2006.